```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM TIPTON, et al.          :    CIVIL ACTION
                                :
                                :
         v.                     :
                                :
VIAQUEST BEHAVIORAL HEALTH      :
OF PENNSYLVANIA, LLC, et al.    :    NO. 10-3573
```

MEMORANDUM

McLaughlin, J.                                    December 23, 2010

This action is brought by William Tipton, a minor, by his Grandmother and guardian ad litem Roberta Keith, as a result of the minor plaintiff's placement at Summit Quest Academy. While at Summit Quest Academy, the minor plaintiff was sexually assaulted by another resident. The defendants Centre County Base Service Unit ("Centre County BSU") and Centre County Children and Youth Services ("Centre County CYS") (collectively "Centre County defendants") and the defendant Community Care Behavioral Health Organization ("CCBH") have moved to dismiss the plaintiffs' complaint.[1] For the following reasons, the Court will grant the defendants' motions to dismiss.

---

[1] All of the remaining defendants in this action have reached a settlement agreement with the plaintiffs.

I. <u>Facts as Alleged in the Complaint</u>

On April 16, 2007, the Court of Common Pleas of Centre County issued an Order placing the minor plaintiff in the custody of Centre County CYS. Compl. ¶ 22. On or about February 20, 2007, the Centre County defendants placed the minor plaintiff in a residential care facility called Zerby Gap. Compl. ¶ 30. The minor plaintiff was determined to be eligible for placement in a residential treatment facility for the purpose of receiving inpatient therapeutic treatment for inappropriate sexual behaviors. Compl. ¶ 31.

The minor plaintiff was transferred to the Summit Quest Academy on or about December 18, 2007. Compl. ¶ 32. On or about May 24, 2009, a male resident known only as "Kaimboo," who is not a party to this action, sexually assaulted the minor plaintiff in his bedroom on at least two occasions. Compl. ¶ 36. The minor plaintiff reported the sexual assault to the staff at Summit Quest Academy on June 2, 2008. Compl. ¶ 37. The defendants knew or should have known that Summit Quest Academy had a reputation for lax supervision and regulatory noncompliance and knew or should have known that sexual assaults had taken place in the past at Summit Quest Academy. Compl. ¶ 35.

Without specifying which defendant committed any act in particular, the complaint states that the defendants failed to

adequately supervise the minor plaintiff, failed to take appropriate action to prevent and/or minimize the extent of the minor plaintiff's injuries, failed to properly supervise the living arrangements at Summit Quest Academy, exposed the minor plaintiff to sexual abuse, and failed to adopt rules to ensure quality care for individuals receiving mental health services, among other assertions.  See Compl. ¶¶ 48, 53.

CCBH is a private nonprofit managed care organization that administers Medicaid benefits to members such as the minor plaintiff.  Compl. ¶ 16.  Centre County BSU is a local government unit that provides mental health services and facilities for mentally impaired individuals in Centre County, Pennsylvania.  Compl. ¶ 17.  Centre County CYS is a local government unit that provides social services to youths and their families in Centre County.  Compl. ¶ 18.

Based on the foregoing allegations, the plaintiffs bring two counts.  Count I alleges that the defendants violated the minor plaintiff's Fourth and Fourteenth Amendment rights and "similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law."  Compl. ¶ 48.  Count I is brought pursuant to 42 U.S.C. § 1983.  Count II alleges that the defendants were grossly negligent by placing the minor plaintiff at Summit Quest Academy.

II. <u>Analysis</u>

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true, and must construe the complaint in the light most favorable to the plaintiff. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). When evaluating a motion to dismiss, the court should disregard any legal conclusions. The court must then determine whether the facts alleged are sufficient to show that the plaintiffs have a "plausible claim for relief." <u>Fowler</u>, 578 F.3d at 210. If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, then the complaint has alleged, but it has not shown, that the pleader is entitled to relief. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2008).

    A.   <u>Count I: § 1983</u>

A § 1983 claim has two essential elements: (1) the conduct complained of must be "committed by a person acting under color of state law"; and (2) this conduct must "deprive[] a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 184 (3d Cir. 1993) (internal quotation marks omitted).

1. <u>Under Color of State Law</u>

The "under color of law" requirement means that merely private conduct, no matter how discriminatory or wrongful, does not violate § 1983. <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999). "The principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Leshko v. Servis</u>, 423 F.3d 337, 339 (3d Cir. 2005).

This inquiry involves three tests: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." <u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009) (citations, quotations, and alterations omitted). However, regardless of the approach a court employs, the court must:

> remain focused on the heart of the state action inquiry, which . . . is to discern if the defendant exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.

<u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 639 (3d Cir. 1995) (citations omitted). These inquiries are fact specific. <u>Kach</u>,

5

589 F.3d at 646. CCBH argues that it cannot be considered a state actor based on the allegations of the complaint under any of these tests.[2]

The gravamen of the "public function" test is whether the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities reserved to the government. Brown v. Philip Morris, Inc., 250 F.3d 789, 801–802 (3d Cir. 2001). The Court of Appeals for the Sixth Circuit has observed that providing mental health services is not an activity traditionally reserved to the government. See Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992) ("[P]roviding mental health services has not been a power which has traditionally been exclusively reserved to the state."). In addition, receipt of state funds does not by itself transform an organization into a state actor. See Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982); Robert S. v. Stetson Sch., Inc., 256 F.3d 159, 165 (3d Cir. 2001) ("[I]t is clear that [the defendant's] receipt of government funds did not make it a state actor."). In Robert S., the minor plaintiff, was placed in the Stetson School, which specialized in the treatment and education of juvenile sex offenders. Id. at 161-162. The private school

---

[2] The Centre County defendants do not contest that they have acted under the color of state law.

received state funds, but this was insufficient to transform the school into a state actor. Id. at 169.

The "close nexus test" addresses whether there is a sufficiently close nexus between the state and a regulated entity such that the action may be fairly treated as an act by the state itself. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999). In American Manufacturers, the Supreme Court held that medical payment decisions made pursuant to a state workers' compensation program by private insurers do not constitute state action. Id. at 58 ("We conclude that an insurer's decision to withhold payment and seek utilization review of the reasonableness and necessity of particular medical treatment is not fairly attributable to the State."). The United States Court of Appeals for the Third Circuit has also observed that "the presence of both . . . regulation and flow of funds [] that are separately unpersuasive in the state action inquiry does not amount to more than each alone; the combination brings no greater result — namely, no state action." Crissman v. Dover Downs Entm't, 289 F.3d 231, 244 (3d Cir. 2002).

Under the "symbiotic relationship" test, courts examine whether there is a interdependence between the government and the defendant. Brown v. Philip Morris, Inc., 250 F.3d 789, 803 (3d Cir. 2001). This test asks whether the government has "insinuated itself into a position of interdependence" with the

defendant.  Id. (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).  A "symbiotic relationship" demands "a close association of mutual benefit" between the state and the private entity or person.  Benn v. Universal Health Sys., 371 F.3d 165, 173 (3d Cir. 2004) (quoting Crissman, 289 F.3d at 240).  This is a "narrow" basis for finding that private action is attributable to the state.  Id.

In this case, the complaint is devoid of allegations that would satisfy any of these tests against the defendant CCBH.  The complaint does not allege that CCBH provides mental health services through the state, but rather CCBH is alleged only to have administered Medicaid benefits to its members including the minor plaintiff.  As courts have made clear, the mere receipt of public funding is insufficient to transform CCBH into a state actor.  The complaint has also failed to allege facts that the state coerced or encouraged CCBH to act in a particular way or make a particular decision, and there are no facts alleged that CCBH has an "interdependent" relationship with Pennsylvania.

The complaint does make the allegation that Tipton was in the physical custody, care, and control of CCBH.  Compl. ¶ 32.  The complaint, however, fails to provide factual allegations to support this conclusion.  There are no facts alleged that suggest that CCBH was in some way the guardian of the plaintiff or that CCBH housed or had physical control over the plaintiff.  The

8

Court concludes that this allegation is not "well-pleaded" because it is not supported by any factual allegations.

In opposition to CCBH's motion, the plaintiffs cite to Fialkowski v. Greenwich Home for Children, Inc., 683 F. Supp. 103, 105 (E.D. Pa. 1987). Fialkowski did not discuss a managed care organization like CCBH, but rather addressed a base services unit, like the defendant Centre County BSU. Based on the plaintiffs' limited allegations of the involvement of CCBH, the Court concludes that the plaintiffs have failed to plausibly allege that CCBH is a state actor.

2. Deprivation of a Constitutional Right

Courts have recognized two exceptions to the general rule that there is no Constitutional violation for a state's failure to protect individuals against violence: (1) if there is a "special relationship" or (2) if there is a "state-created danger." See Bright v. Westmoreland Cnty., 443 F.3d 276, 280-281 (3d Cir. 2006). The plaintiffs' complaint, however, must allege more than mere negligence to support a constitutional violation. See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 911 (3d

Cir. 1997) ("[M]erely negligent acts cannot support a claim under the state-created danger theory of § 1983.").[3]

The "nub" of the plaintiffs' complaint is that the moving defendants knew or should have known that Summit Quest Academy had a reputation for lax supervision, regulatory noncompliance, and past sexual assaults. The plaintiffs have, however, failed to demonstrate how or on what basis the defendants should have known about problems with the minor plaintiff's living arraignments. For example, the complaint does not describe any complaints that have been filed against Summit Quest Academy. Rather, the complaint asserts that the defendants "ignor[ed] and/or den[ied] signs that the minor plaintiff was being exposed to forcible assault and battery . . . ." Compl. ¶ 48. The complaint does not show how the defendants ignored such signs or what these signs were.

In addition, the complaint makes vague allegations that the defendants, without specifying which defendants, "fail[ed] to observe and/or enforce state, federal, and/or local laws and/or regulations with regard to minor plaintiff and defendant Summit Quest Academy . . . ." Compl. ¶ 48. The complaint, however,

---

[3] To the extent that the plaintiffs have alleged violations of "similar provisions of the Pennsylvania Constitution," 42 U.S.C. § 1983 does not provide a remedy for a violation of a right based on a state constitution. See, e.g., Lecrenski Bros. v. Johnson, 312 F. Supp. 2d 117, 120 (D. Mass. 2004).

10

fails to reference any disciplinary actions or certification revocations against Summit Quest Academy or describe which "laws and/or regulations" were violated.

The complaint also does not cite to related law suits, or make other factual allegations that would plausibly suggest that Summit Quest Academy does have such a reputation or that the defendants knew or should have known about such a reputation. Rather, the complaint merely contains boilerplate allegations that the defendants ignored signs, authorized placement in an "obviously" dangerous situation, and failed to properly supervise the minor plaintiff. Compl. ¶ 48. These bare allegations without more are insufficient to show that the plaintiffs are entitled to relief for a constitutional violation. The Court will therefore grant the defendants' motions to dismiss for Count I.

B. Count II: Gross Negligence

The plaintiffs also allege that the defendants were reckless and/or grossly negligent by placing the minor plaintiff in Summit Quest Academy. The plaintiffs allege that the minor plaintiff was treated pursuant to the Mental Health and Mental Retardation Act of 1966 ("MHMRA"), 50 P.S. § 4101, et seq. Compl. ¶ 17. The MHMRA provides:

> No person and no governmental or recognized nonprofit health or welfare organization or

11

> agency shall be held civilly or criminally
> liable for any diagnosis, opinion, report or
> <u>any thing done pursuant to the provisions of
> this act</u> if he acted in good faith and not
> falsely, corruptly, maliciously or without
> reasonable cause; provided, however, that
> causes of action based upon <u>gross negligence</u>
> or incompetence shall not be affected by the
> immunities granted by this section.

50 P.S. § 4603 (emphasis added). The moving defendants are immune from liability for "any thing done" under the MHMRA except for acts of gross negligence. The meaning of "gross negligence" is not defined statutorily. The Court of Appeals for the Third Circuit has concluded that gross negligence under the MHMRA has the generally accepted meaning of that term. <u>Fialkowski v. Greenwich Home for Children, Inc.</u>, 921 F.2d 459, 462 (3d Cir. 1990). Gross negligence has been described as "the want of even scant care" and the "failure to exercise even that care which a careless person would use." <u>Id.</u> (citations omitted). In interpreting the term "gross negligence" in the Mental Health Procedures Act, which was also undefined statutorily, the Supreme Court of Pennsylvania defined "gross negligence" as "flagrant" and "grossly deviating from the ordinary standard of care."

> We hold that the legislature intended the
> term gross negligence to mean a form of
> negligence where the facts support
> substantially more than ordinary
> carelessness, inadvertence, laxity, or
> indifference. The behavior of the defendant
> must be flagrant, grossly deviating from the
> ordinary standard of care.

Albright v. Abington Mem. Hosp., 696 A.2d 1159, 1164 (Pa. 1997).

As discussed in relation to the plaintiffs' constitutional claim, the plaintiffs offer boilerplate allegations that the defendants failed to observe state law, failed to supervise and monitor Summit Quest Academy, and failed to properly credential residential treatment providers, among other assertions. See Compl. ¶ 53. The plaintiffs, however, have failed to provide factual allegations that provide support for these conclusions. For example, the plaintiffs provide no factual detail as to how the defendants failed to supervise and monitor Summit Quest Academy, which laws were not observed, or how the defendants otherwise failed to take appropriate actions. These allegations are the types of legal conclusions that the Court must disregard under Iqbal. Iqbal, 129 S. Ct. at 1949.

Even accepting these conclusory allegations, the plaintiffs' allegations against the moving defendants are insufficient to demonstrate "gross negligence." To constitute "gross negligence," the defendants' behavior "must be flagrant, grossly deviating from the ordinary standard of care." Albright v. Abington Mem. Hosp., 696 A.2d 1159, 1164 (Pa. 1997). Pennsylvania courts have refused to characterize similar allegations as "gross negligence." For example, in Willett v. Evergreen Homes, the plaintiff's son drowned in a bathtub in a residential facility for mentally retarded individuals. Willett

v. Evergreen Homes, Inc., 595 A.2d 164, 165 (Pa. Super. 1991). The residential facility and its employees were aware of the decedent's history of seizures, knew the importance of monitoring his bathing activities, and yet left the decedent unattended, which resulted in his death. Id. at 168. However, the plaintiff's allegations against Family Counseling Center, a nonprofit health and welfare organization, were insufficient to be characterized as "gross negligence." Id. In particular, Family Counseling Center and its employees were alleged to have been responsible for instituting the transfer of the decedent to the residential facility, approved of the transfer, and failed to properly evaluate the program content and quality of personnel. Id. at 167. The plaintiff also alleged that one of the employees of Family Counseling Center ignored the advice of personnel from the facility where the decedent had been residing concerning the transfer. Id. The Superior Court concluded that these allegations do not form a basis for a complaint of "gross negligence" and/or "incompetency" which would limit Family Counseling Center's immunity. Id. See also Fialkowski v. Greenwich Home for Children, Inc., 921 F.2d 459, 464 (3d Cir. 1990) (concluding that the BSU, a nonprofit healthcare provider, was not grossly negligent because the residential facility bore "the predominant responsibility for the safety of its residents.").

In this case, the defendants are alleged to have failed to properly investigate the placement of the defendant and failed to monitor his well being.  It is clear from the complaint that the moving defendants did not bear the predominant responsibility for the minor plaintiff.  At most, the complaint's conclusory allegations are indicative of "ordinary carelessness, inadvertence, laxity, or indifference."  Id.  The Court will therefore grant the defendants' motions to dismiss for Count II.

An appropriate order follows separately.